694 F.2d 904
 8 Ed. Law Rep. 10
 ZVI D., by his mother and next friend, SHIRLEY D., Appellants,
v.
Gordon AMBACH, individually and as Commissioner of Education
of the State of New York; Board of Education of the City
School District of the City of New York; Frank Macchiarola,
individually and as Chancellor of the New York City Board of
Education; Christy Cugini, individually and as Executive
Director of the Division of Special Education of the New
York City Board of Education; Patricia Vitacco,
individually and as Chairperson of the District 20
Subcommittee of the Committee on the Handicapped of the New
York City Board of Education, Appellees.
 No. 49, Docket 81-7667.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 1, 1982.
Decided Nov. 26, 1982.
 
 Joel B. Lieberman, Community Action for Legal Services, Inc., Brooklyn, N.Y. (Steven M. Bernstein, Brooklyn, N.Y., of counsel), for appellants.
 Frederick W. Burgess, Albany, N.Y. (Robert D. Stone, Donald O. Meserve, Albany, N.Y., of counsel), for appellee Com'r of Educ.
 Fay Leoussis, Asst. Corp. Counsel, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel for the City of New York, Leonard Koerner, New York City, of counsel), for municipal appellees.
 Michael A. Rebell, Rebell & Krieger, New York City (Marion C. Katzive, White Plains, N.Y., John C. Gray, Jr., Harold Adler, Brooklyn Legal Services, Brooklyn, N.Y., of counsel), Jane R. Stern, Advocates for Children of New York, Inc., Long Island City, N.Y., for amici curiae.
 Before LUMBARD, OAKES and WINTER, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This appeal is from the denial of a preliminary injunction that would direct the New York City Board of Education to fund a handicapped child's private education pending proceedings challenging a free appropriate public placement. The United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, held inter alia that the status quo section of the Education of the Handicapped Act, 20 U.S.C. Sec. 1415(e)(3),[1] did not apply since the child "was not promised and was not receiving public funding when the [complaint] proceedings were initiated [by his parent] and since he began the new school year [1980-81] in his private program without any new assurances." Zvi D. v. Ambach, 520 F.Supp. 196, 203 (E.D.N.Y.1981). We affirm substantially on Judge Nickerson's opinion adding one caveat, on an issue called to our attention by amici curiae.[2]
 
 
 2
 I. The Education of the Handicapped Act, 20 U.S.C. Secs. 1400-1461 (1976 & Supp. V 1981) gives parents a right to an impartial due process hearing on complaints with respect to the educational placement of their handicapped children, id. Sec. 1415(b)(2), and to state or federal judicial review of final administrative decisions, id. Sec. (e)(2).[3] During the pendency of these administrative and judicial proceedings, "the child shall remain in the then current educational placement ... until all such proceedings have been completed." Id. Sec. (e)(3); 34 C.F.R. Sec. 300.513 (1981).[4] This provision is, in effect, an automatic preliminary injunction. The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships. Compare Monahan v. Nebraska, 491 F.Supp. 1074, 1088 (D.Neb.1980), aff'd in part, vacated in part on other grounds, 645 F.2d 592, 597-98 (8th Cir.1981), with Caulfield v. Board of Education, 583 F.2d 605, 610 (2d Cir.1978).
 
 
 3
 Under the statute, the inquiry focuses on identifying "the then current educational placement,"[5] and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act. Monahan, 491 F.Supp. at 1089.
 
 
 4
 A handicapped child "placed in or referred to a private school or facility by a public agency," 34 C.F.R. Sec. 300.401, has all the rights of a handicapped child served by a public agency. Id. Sec. (b); 20 U.S.C. Sec. 1413(a)(4)(B)(ii). The due process procedures apply even if a handicapped child is placed in a private school of the parent's choice although a free appropriate education is available; disagreements between the parent and the public agency regarding the availability of an appropriate program and who will pay for it are to be resolved under Sec. 1415's procedural safeguards. 34 C.F.R. Sec. 300.403(b). The public agency, however, is not required to pay for the parent-initiated placement.[6] Id. Sec. (a); Stemple v. Board of Education of Prince George's County, 623 F.2d 893, 897-98 (4th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); Monahan, 491 F.Supp. at 1089-90.
 
 
 5
 II. Zvi D. is an 18-year-old student with minimal brain dysfunction who was transferred to the private The Alternative School from another private school by his parent in the fall of 1977. After enrolling Zvi D., the parent requested evaluation by the District 20 Subcommittee of the New York City Board of Education's Committee on the Handicapped (COH), apparently to determine Zvi's eligibility to receive public funding for his private schooling. The COH evaluated Zvi's handicap and in April of 1978 recommended a free appropriate public education placement. His parent contested this initial placement recommendation. Before the appropriateness of the COH recommendation could be reviewed, the Board of Education essentially agreed to postpone the initial evaluation until May 1979 and fund Zvi at The Alternative School for the 1978-79 school year only.[7] The November 27, 1978, agreement clearly stated: "This funding is being provided with the stipulation that a review of Zvi's classification will be conducted at the end of the current year with a view toward placing him in an appropriate public program in September, 1979."
 
 
 6
 In May of 1979 the Committee reevaluated Zvi D. for the 1979-80 school year and recommended placement in an HC-30 class at New Utrecht High School. His parent challenged this initial placement recommendation. Hearings on the appropriateness of Zvi D.'s classification and placement began in April 1980. On July 9, 1980, Impartial Hearing Officer Harry Weintraub affirmed the initial placement recommendation but, nevertheless, ordered the Board of Education to fund Zvi D. for the 1979-80 school year because of the COH's failure to have a physician present at its May 1979 meeting as was then required by Section 4402(b)(1) of the New York Education Law. The hearing officer then ordered a reevaluation of Zvi D., because a year had lapsed since the May 1979 evaluation and recommendation.
 
 
 7
 The third initial COH recommendation, on July 15, 1980, was in accord with the earlier ones--an HC-30 class at New Utrecht High School for the 1980-81 school year. Mrs. D. was still opposed to the public placement recommendation and again instituted administrative review proceedings to challenge its appropriateness. Thus, Mrs. D. again refused to place her son in public school, and instead maintained him at The Alternative School.
 
 
 8
 III. The issue before us on review is whether the district court erred in failing to enjoin the Board of Education to fund Zvi D.'s private schooling. We find that the appellant has not established that The Alternative School was Zvi D.'s "current educational placement" within the meaning of 20 U.S.C. Sec. 1415(e)(3). Neither the November 1978 stipulation nor the July 9 Hearing Officer's Report constituted public agency placement of Zvi D., nor did the COH at any time determine that the parent's private placement was appropriate. Rather than trying to change Zvi D.'s placement, the COH offered an initial placement. Zvi's parent is under no requirement to accept this public school placement, and may seek review of Hearing Officer Weintraub's determination that the placement is appropriate for Zvi's needs. During this review of his initial placement, Zvi has a right to a place in public school, id., or he may remain at The Alternative School at his parent's expense.[8]
 
 
 9
 Thus we agree with the district judge that the status quo provision would apply if the Board of Education's Committee on the Handicapped had previously agreed to, or had been ordered to provide private school placement. In Zvi D.'s situation, the COH had not so agreed or been ordered, though it had through stipulation agreed to pay for The Alternative School placement in the 1978-79 school year and been ordered by Impartial Hearing Officer Weintraub to pay for such placement in the 1979-80 school year because the COH had failed to have a physician present at the classification conference held on May 29, 1979. Payment and placement are two different matters.
 
 
 10
 IV. But we do not agree with Judge Nickerson that Sec. 1415(e)(3) must be read to limit a child's status quo rights "to finish[ing] the school year in his existing placement." 520 F.Supp. at 204. Insofar as this analysis was necessary to the district court's conclusion, we modify that decision. The time frame of the administrative and judicial "proceedings" under Sec. 1415(e)(3) is not necessarily coterminous with the limits of the school year. Rather, it includes the time necessary to review and adjudicate the merits of a single "complaint" regarding evaluation or placement of the child. In an appropriate case, the statute would require us to order funding for the duration of the review proceedings.
 
 
 11
 Judgment affirmed.
 
 
 
 [1]
 20 U.S.C. Sec. 1415(e)(3) (1976) provides:
 During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.
 
 
 [2]
 Amici curiae are the class and individual plaintiffs in Jose P. v. Ambach and United Cerebral Palsy of N.Y.C., Inc. v. Board of Educ. of the City School Dist., consolidated actions No. 79-C-270, 560 brought in the United States District Court for the Eastern District of New York to implement special education reforms. Jose P. v. Ambach, 3 E.H.L.R. 551:245, 3 E.H.L.R. 551:412 (E.D.N.Y.1979); United Cerebral Palsy of N.Y.C., Inc. v. Board of Educ. of the City School Dist., 3 E.H.L.R. 551:251 (E.D.N.Y.1979), reviewed in part sub nom. Jose P. v. Ambach, 669 F.2d 865 (2d Cir.1982)
 
 
 [3]
 20 U.S.C. Sec. 1415(b) (1976) provides in part:
 (1) The procedures required by this section shall include, but shall not be limited to--
 ....
 (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.
 (2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.
 
 
 [4]
 The educational agency and parent may, however, agree to a change in placement. 20 U.S.C. Sec. 1415(e)(3); 34 C.F.R. Sec. 300.513 (1981). If the parent's complaint involves an application for initial admission to public school, the child has a right to a public placement during the pendency of the proceeding. 20 U.S.C. Sec. 1415(e)(3)
 The due process requirements of New York law and regulations track the federal standard. N.Y.Educ.Law Sec. 4402(1)(b)(3)(c) (McKinney 1981); 8 N.Y.C.R.R. Sec. 200-1.5(b)(2)(viii); 16 Educ. Dep't Reg. 18 (1976) (due process safeguards in education regulations mandatory in determining handicapped placement).
 
 
 [5]
 Neither the statute nor legislative history instructs a reviewing court how to identify "the then current educational placement." See Stemple v. Board of Educ., 623 F.2d 893, 897 (4th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981)
 
 
 [6]
 We note that in New York State, parents who have sought educational placements for their children in public schools may unilaterally enroll their children in an appropriate program in approved private schools if a public placement is not offered within 60 days of application. The court has determined that unilateral parental placements are necessary to reduce lengthy waiting lists. Jose P. v. Ambach, 3 E.H.L.R. 553:298 (E.D.N.Y.1982), modified in part, No. 79-C-270 (E.D.N.Y. July 8, 1982). See also Anderson v. Thompson, 658 F.2d 1205, 1213-14 (7th Cir.1981)
 
 
 [7]
 The municipal appellee claims that this action was due to the COH's failure to comply with the time limitations imposed by the Commissioner of Education in his supervisory capacity under 20 U.S.C. Sec. 1414
 To compel compliance with the State's 60-day period in which a COH is required to recommend and effectuate an appropriate placement (8 N.Y.C.R.R. Sec. 200-1.5(d)), prior to December, 1980, the State Commissioner generally ordered local educational agencies to fund for one school year an existing private placement when they failed to comply with the time limitation.
 Brief at 18.
 
 
 [8]
 We of course express no view whether Zvi D. could recover his tuition costs as damages if judicial review determined that the recommended public placement was not appropriate. The statute creates a private cause of action and directs that the court "shall grant such relief as [it] determines is appropriate." 20 U.S.C. Sec. 1415(e)(2). Courts are divided on whether money damages are appropriate in general, and in particular whether reimbursement of tuition is justified. See the discussion in Miener v. Missouri, 673 F.2d 969 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 215, 74 L.Ed.2d ---- (1982); Gregg B. v. Board of Educ. of Lawrence School Dist., 535 F.Supp. 1333, 1338-39 (E.D.N.Y.1982)