Simon **JACOBSEN**, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. 82–2957.

United States District Court, District of Columbia.

April 28, 1983.

Michael J. Eig, Washington, D.C., for plaintiffs.

Julia L. Sayles, Asst. Corp. Counsel, Washington, D.C., for defendants.

## OPINION

JOHN GARRETT PENN, District Judge.

The plaintiffs filed this action pursuant to the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.*, the Fifth Amendment, 42 U.S.C. § 1983, and the decision and plan entered in *Mills v. District of Columbia Board of Education*, 348 F.Supp. 866 (D.D.C.1972). The case is now before the Court on cross motions for summary judgment.

### I

Simon Jacobsen is a 17 year old specifically learning disabled child who had been placed and funded by the District of Columbia Public Schools (DCPS) at the Kingsbury Lab School (Kingsbury), a private special education school, from 1971 to 1981. At the end of the 1980—1981 school year, it was apparent that Simon could not return to Kingsbury since he had completed the most advanced course at the school, and both his parents and DCPS undertook to find a new special education placement for him.

In May 1981, an Individualized Education Program (IEP) was prepared which called for a residential placement. The IEP was prepared at Kingsbury without the participation of DCPS. On August 5, 1981 DCPS sent the parents a Notice of Proposed

Change of Educational Program in which it proposed to place Simon in the Coolidge Senior High Learning Disabilities Program.

On August 19, the parents appealed the proposed placement and requested a due process hearing. A hearing was scheduled for September 4, but was continued to October 19 at the request of the plaintiffs in order that the child could be independently evaluated. During the same month, Simon's parents placed him at Forman School, a private boarding special education school in Litchfield, Connecticut. The hearing scheduled for October 19 was continued to November 25 at the request of DCPS, and on November 25 the case was closed when counsel for the parents failed to appear at the due process hearing.

A new hearing was scheduled for January 13, 1982. At that hearing, the parties concluded that the Kingsbury IEP was defective and it was agreed that a new IEP conference would be scheduled in one week and that DCPS would thereafter propose a placement within 20 working days. A new IEP was drafted on January 22 and DCPS advised counsel for the plaintiffs that a placement decision would be rendered on or before February 24. On February 24, 1982 DCPS advised the plaintiffs that it had "made an administrative decision to assume financial responsibility for Simon Jacobsen at the Forman School. Further recommendations will be rendered as deemed appropriate." *See* Defendants' Motion Exhibit 7.

On July 21, 1982, DCPS informed plaintiffs that Simon had been accepted for evaluation for placement at the Chelsea School in Silver Spring, Maryland. The letter also advised the parents "that our review does not support a need for continued residential placement for Simon, and therefore, we will not assume any further financial responsibility for such placement." *See* Defendants' Motion Exhibit 8. Just a few days after sending the July 21 letter, DCPS sent the parents a Notice of Proposed Change in Educational Program advising them that

DCPS was recommending the Coolidge Senior High Learning Disabilities Program as Simon's placement for the 1982—1983 school year.[1] On August 1, 1982, plaintiffs' counsel advised DCPS that plaintiffs had appealed the decision to place Simon at Coolidge. Counsel also questioned the referral to Chelsea and the recommendation for Coolidge and noted that the parents' attempts to contact the Chelsea representative had been unsuccessful in that they had been advised that he was on vacation. Plaintiffs' counsel also advised DCPS that plaintiffs would expect funding at Forman pending a final determination on Simon's educational placement.

By letter dated September 1, 1982, plaintiffs were informed that a due process hearing was scheduled for September 10. In another letter dated September 1, DCPS advised plaintiffs that another appointment had been scheduled for Simon at Chelsea School. Plaintiffs responded on September 3 noting their confusion over the DCPS referral to Chelsea in view of its recommendation for Coolidge. They also complained that DCPS was late in responding to their letters.

The due process hearing was continued at plaintiffs' request; they requested the continuance because of the confusion concerning the referral of Simon to Chelsea and the recommendation for placement at Coolidge. Simon was interviewed at Chelsea between September 7 and 10, 1982, and accepted by that school by letter dated September 16. DCPS then sent a Notice of Proposed Change in Educational Program on September 15 recommending Simon's placement at Chelsea. Plaintiffs re-enrolled Simon at Forman on or about September 17.

On October 15, a due process hearing was held to address the appropriateness of the DCPS proposed placements at Coolidge and Chelsea. Plaintiffs appeared and requested a continuance of the hearing so they could file the instant action in order to require DCPS to fund Simon at Forman for the

---

1. Learning Center children are assigned to special education and receive at least 25% of their academic school instruction program in regular education with time at the Learning Center determined in days or half days. *See* Defendants' Motion Exhibit 11.

1982—1983 school year based on their contention that Forman constituted Simon's "current" placement. *See* 20 U.S.C. § 1415(e)(3). The hearing officer granted a ten day continuance. This action was filed on October 18, but although it is captioned a complaint for declaratory and *injunctive relief,* a motion for preliminary injunction was not filed. Defendants answered the complaint on November 10 and plaintiffs' motion for summary judgment was filed on December 16, 1982.[2] DCPS filed a cross motion for summary judgment and the motions were heard on March 22, 1983.

The final due process hearing was held on November 5, 1982. The hearing officer determined that the DCPS IEP dated January 1982 did not "conform to the requirements of the law" and directed DCPS to prepare a new IEP within 20 school days. The hearing officer refrained from deciding the appropriateness of either Coolidge or Chelsea due to a lack of sufficient information. Finally, he determined that DCPS had adopted the Forman School as Simon's placement. He directed DCPS to fund Simon at Forman until "it has placed Simon in an appropriate special education program." The hearing officer based this determination on his finding that Forman was Simon's present educational placement.

## II

The parties agree that the sole issue presented in this case is whether DCPS is financially responsible for Simon's placement at Forman School for the 1982—1983 school year, where it had agreed to fund the placement at that school for the 1981—1982 school year.

When a school system recommends a proposed special education placement and the parents disagree, the parents may request and obtain an impartial due process hearing. 20 U.S.C. § 1415; 34 C.F.R. §§ 300.-506—300.510. During the pendency of any administrative appeal, and indeed, any appeal to the courts, "the child shall remain in the then current educational placement of such child." 20 U.S.C. § 1415(e)(3); 34

C.F.R. § 300.513. Of course, the parents are free to place the child in a private special education setting during this period, but when they do so, it is at their own expense and not that of the school system. 34 C.F.R. § 300.403.

■ Therefore, when a parent is dissatisfied with the school recommended educational placement, the parent may appeal and pending the outcome, the child remains at his present placement, be it public or private, at DCPS expense. While in some cases, DCPS has been held financially responsible for the parents' unilateral placement in a private institution, those cases represent the exception and not the rule, and resulted due to the failure of DCPS to provide the necessary procedural safeguards in processing requests for special education.

Plaintiffs contend that when DCPS agreed to place and fund Simon at Forman School for the 1981—1982 school year, that school became Simon's current and present placement under 20 U.S.C. § 1415(e)(3) and 34 C.F.R. § 300.513, and that Forman remains his present placement during the pendency of any administrative or judicial proceedings until another appropriate placement is finally determined.

On the other hand, DCPS contends that the agreement to place and fund Simon at Forman School was for 1981—1982 only and that Simon's present placement is the public school system.

## III

DCPS cites *Zvi v. Ambach,* 520 F.Supp. 196 (E.D.N.Y.1981), *affirmed,* 694 F.2d 904 (2d Cir.1982) in support of its argument. In that case, the parents and the public school system argued whether the school system should place and fund Zvi in a private special educational placement at The Alternative School for the 1978—1979 school year, where his mother had enrolled him during the 1977—1978 school year. A hearing was scheduled, but before the hearing the mat-

---

**2.** *See* Order filed March 8, 1983, scheduling a hearing.

ter was settled by a letter agreement dated November 27, 1978. 520 F.Supp. at 198. In that letter, the school committee agreed to fund his placement at The Alternative School for 1978—1979 but not for 1977—1978. The agreement also provided:

This funding is being provided with the stipulation that a review of Zvi's classification will be conducted at the end of the current year with a view towards placing him in an appropriate public program in September, 1979.

*Id.* When the parties could not agree upon a placement for the 1979—1980 school year, the parents initiated administrative proceedings. A hearing officer ordered the committee to fund him in the private school for the 1979—1980 school year because the committee had failed to have a physician present at the classification hearing. Zvi attended the same private school during 1980—1981 despite a contrary recommendation by the committee. His parents again initiated administrative proceedings and argued, pursuant to 20 U.S.C. § 1415(e)(3), that pending a final determination of their appeal, Zvi's placement for 1980—1981 was The Alternative School. 520 F.Supp. at 203.

The trial court ruled that the committee was not financially responsible for Zvi's placement at the private school. The Court reasoned that "[s]ince he was not promised and was not receiving public funding when the proceedings [regarding the 1980—1981 school year] were initiated and since he began the new school year in his private program without any new assurances, he is not entitled to public funding during the pendency of the proceedings." *Id.*

In reaching this decision, the district court concluded that for the purposes of the "status quo" provision found in 20 U.S.C. § 1415(e)(3), the proceedings referred to in that section commenced when the parents presented a complaint to the committee regarding the proposed educational placement. Since Zvi's mother did not file the complaint until sometime after July 17, 1980 at a time when Zvi had not been promised and was not receiving public funding because he was no longer in school, the status quo provision did not apply. Section 1415(e)(3) provides:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

The trial court apparently interpreted "the pendency of any proceedings conducted pursuant to this section" to mean that the status quo provision was effective only if and when an administrative complaint had been filed.

This Court, although not bound by the interpretation of the statute by another trial court, nevertheless gives great weight and respect to such an interpretation. However, this Court disagrees with the reasoning of the *Zvi* court, although not necessarily with the end result. The court in *Zvi* seemed to place too great an emphasis on whether the school committee was then actually funding the placement at the time the administrative complaint was filed. However, the key is not whether the child is actually being funded at the time the administrative complaint is filed; rather, the focus should be on whether the earlier placement was a "current" placement as that term is used in Section 1415(e)(3). If it is, the placement continues until another appropriate placement is found, assuming that the parents have not engaged in dilatory tactics. In this way, the true status quo is maintained, as is the continuity of the child's education.

This Court is not unaware of the concerns of the *Zvi* court; to prevent the parents from using dilatory tactics to delay the proceedings into the new school year and then to invoke the status quo provision. But, the Court always has the power to prevent abuse of the administrative or judicial process, and when the litigants, either

the parents or the school system, engage in such tactics, the court can take appropriate remedial action.

Although the court of appeals affirmed the decision of the trial court in *Zvi*, it, like this Court, focused on what was "the then current educational placement" of the child. 694 F.2d at 906. The court then went on to state that

> under the statute, the inquiry focuses on identifying 'the then current educational placement,' and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act (citation and footnote omitted)

*Id.* After considering the relevant facts, the court concluded that The Alternative School was not Zvi's "current educational placement" within the meaning of 20 U.S.C. § 1415(e)(3); therefore the committee was not financially responsible for the 1980—1981 school year.[3] As noted, this Court applies the same reasoning here.

### IV

 Simon's parents unilaterally placed him at the Forman School in September 1981. Prior to that, DCPS had recommended placement at Coolidge for the 1981—1982 school year. The controversy concerning placement for the year ended when DCPS advised the parents, in a letter dated February 24, 1982, that it had made "an administrative decision to assume financial responsibility for Simon . . . at the Forman School." Defendants' Motion Exhibit 7. 'The letter does not refer to a particular school year although it obviously included the then current year. DCPS then went on to state that "[f]urther recommendations will be rendered as deemed appropriate."

Significantly, the notification to the parent did not limit the placement to the 1981—1982 school year or provide that another placement would be considered for the 1982—1983 school year.

The letter sent to the parents in this case differs from that in Zvi's case for there the school committee advised the parents that the committee would not fund the child for the 1977—1978 school year but would fund him for the then current 1978—1979 school year. The committee then advised Zvi's parents that the funding was being provided with the "stipulation" that a review of Zvi's classification "would be conducted at the end of the current year with a view to *placing him in an appropriate public program in September, 1979*" (emphasis this Court's). 520 F.Supp. at 198. Thus, the school committee explicitly limited Zvi's placement to the 1978—1979 school year. Although he was funded in the same school for the 1979—1980 school year, such funding was at the direction of a hearing officer and resulted from the failure of the committee to have a physician present at a hearing. The court of appeals concluded that neither the agreement to fund Zvi for 1978—1979 nor the hearing officer's determination for 1979—1980 constituted a public placement and that the committee never determined that Zvi's placement was appropriate. 694 F.2d at 908.

This case differs from Zvi because DCPS did not specifically limit Simon's placement to the 1981—1982 school year. It merely stated that "[f]urther recommendations would be rendered as deemed appropriate." The letter did not serve to put the parents on notice that they should expect a new placement recommendation for the 1982—1983 school year. Since DCPS failed to limit its financial responsibility, the parents were free to assume that DCPS would continue to fund Simon at Forman until a change in the placement made after Notice of a Proposed Change in Educational Program, and the exhaustion of any proceed-

---

**3.** The court noted however that it expressed no view whether Zvi "could recover tuition costs as damages if judicial review determined that

the recommended public placement was not appropriate." 694 F.2d at 908, n. 8.

ings challenging a new proposed placement. Accordingly, Forman was Simon's "current" placement in 1981—1982.

Of course, the parties in these cases should be encouraged to settle such cases where possible, especially when as here, the matter continues well into the school year. The Court does not hold that DCPS cannot settle such cases or that it cannot limit its settlement to the year in question. That issue need not be addressed here since DCPS imposed no such limitation in its acceptance of financial responsibility for Simon's placement.

The determination that Forman School constituted Simon's current placement at the end of the 1981—1982 school year, does not resolve the issue in this case because DCPS also contends that the parents deliberately frustrated its attempt to find a new placement for Simon for the 1982—1983 school year. If that is true, the parents cannot prevail.

V

Apparently, once DCPS sent its letter of February 24, 1982, it did not correspond again with the parents until its letter of July 21, 1982, in which it advised them that Simon had been accepted for evaluation at the Chelsea School in Silver Spring, Maryland. See Defendants' Motion Exhibit 8. In that letter, DCPS also advised the parents that its review "does not support a need for continued residential placement for Simon" and that therefore DCPS was no longer financially responsible for the Forman School. Of course, DCPS was in fact financially responsible for the reasons set out in Part IV, supra. See 20 U.S.C. § 1415(e)(3). Also, as the Second Circuit noted in Zvi, "[t]o cut off public funds would amount to a unilateral change in placement prohibited by the [EAHCA]" (citation omitted). 694 F.2d at 906. On July 30, DCPS sent a Notice of Proposed Change in Educational Program noting Simon's "present educational placement" as Forman School and recommending placement at Coolidge. In doing so, DCPS recommended

the same placement that it had for the 1981—1982 school year.

Plaintiffs' counsel, in a letter dated August 1, responded to the July 21 DCPS letter by noting that he was assuming that DCPS was not following through with the referral to Chelsea School in view of the Notice of Proposed Change in Educational Program recommending Coolidge. Counsel also raised questions concerning the documents in Simon's file which purportedly supported the decision to change the placement, and he properly requested copies of those documents. See Defendants' Motion Exhibit 9. On September 1, DCPS replied to plaintiffs' counsel noting that Simon had failed to keep his appointment at the Chelsea School and scheduling another appointment for September 7–10, 1982. On September 3, counsel responded and noted the inconsistent letters from DCPS and the fact that a hearing had been scheduled on the DCPS proposed placement at Coolidge. See Defendants' Motion Exhibit 14. Simon attended the Chelsea School evaluation on September 7–10, 1982, and on September 15, DCPS sent the parents a Notice of Proposed Change in Educational Program recommending placement at Chelsea School. On September 17, Simon's parents re-enrolled him in Forman.

A due process hearing was held on October 15 and plaintiffs requested a continuance to file this action and require DCPS to maintain Simon at his current placement during the pendency of all appeals. DCPS opposed the continuance but the continuance was granted and a hearing was held on December 13. The hearing officer made no determination on the appropriateness of Coolidge or Chelsea but, noting that the IEP was also to expire in January 1983, he directed DCPS to prepare a new IEP, and in the interim, required DCPS to bear the financial responsibility for Simon's placement at Forman. The parents refused to participate in the IEP conference until DCPS assumed responsibility for Simon's placement at Forman. Defendants' Motion Exhibit 18.

The delay in the administrative process during the summer and fall of 1982 was caused by the failure of DCPS to adhere to the requirements of the EAHCA and the regulations promulgated thereunder. First, by its letter of July 21, 1982, DCPS attempted a unilateral change in placement, for as the Court has found, Simon's then current educational placement was Forman School. *See* Part IV, *supra.* Second, the July 21 letter did not comport with the requirements of 34 C.F.R. §§ 300.504, 300.-505. Third, the same can be said of the notice of July 30. Small wonder that the plaintiffs did not understand their status, and counsel's letter of August 1 properly requested a further explanation and copies of documents supporting the DCPS recommendation. Finally, DCPS appeared to be making inconsistent recommendations between July 21 and September 15 in recommending both Coolidge and Chelsea without any further explanation. From that point on the proceedings deteriorated leading to the filing of the instant suit. The delay is not chargeable to the plaintiffs.

## VI

In sum, this Court finds that Simon's current educational placement during the 1981—1982 school year was Forman and that that placement continues until another appropriate placement is found. The Court further finds that DCPS attempted to make a unilateral change in that placement by its letter of July 21, 1982, and that it was DCPS, through its failure to follow regulations, which delayed the proceedings allowing the administrative appeal to lapse into the 1982—1983 school year. Since Forman was Simon's "current" placement for the 1981—1982 school year and since that placement remains the placement pending the exhaustion of any appeals from the DCPS proposed placement, *see* 20 U.S.C. § 1415(e)(3), and since the delay was caused by DCPS, it follows that Simon's current placement continues to be the Forman School. In view of this determination, defendants' motion for summary judgment must be denied and plaintiffs' motion for summary judgment must be granted.

Plaintiffs, as the prevailing parties, are entitled to counsel fees and costs.

An appropriate order has issued.