The **BOARD OF EDUCATION OF the CITY OF NEW YORK,** Plaintiff,

v.

Gordon **AMBACH,** Commissioner of Education for the State of New York, and Atara J., as guardian-parent and next friend of Asher J., a handicapped child, Defendants.

No. 84 CV 3217.

United States District Court, E.D. New York.

June 25, 1985.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York by Paul Marks, Asst.

Corp. Counsel, New York City, for plaintiff.

Robert D. Stone, New York State Educ. Dept. by James H. Whitney, Albany, N.Y., for defendant Ambach.

Weil, Gotshal & Manges by Myron J. Meadow, New York City, for defendant Atara J.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action arises under the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. § 1401 *et seq.*, and turns on a dispute over whether the private school in which a handicapped child was enrolled pursuant to a Court's order issued in *Jose P. v. Ambach, et al.*, 3 E.H.L.R. 553:299 (E.D.N.Y.1982) (Nickerson, J.), became his "current education placement" under 20 U.S.C. § 1415(e)(3) until proceedings reviewing placement recommendations made by the Board of Education of New York City concluded that a proper placement recommendation had been made.

If the private school was the child's "current placement" as defendant New York State Commissioner found, then the City's Board of Education is liable for the child's tuition up and until its placement recommendation was confirmed as proper. Plaintiff, the City's Board of Education, maintains that the private school in which defendant Atara J.'s son was placed never became his current placement and further maintains that it should not be liable for his school tuition after it had made an appropriate placement recommendation for 1983–84 in May of 1983.

To side with the City Board of Education's position would eviscerate the meaning and intent of the procedural safeguards embodied in 20 U.S.C. § 1415(b)-(e), the purpose of which was to ensure some stability in a handicapped child's school placement during the pendency of impartial review proceedings of the school agency's placement recommendation. A recent Supreme Court case confirms the importance of these safeguards, but its ruling does not directly help us in this case. *Town of Burlington v. Dep't of Education of the Commonwealth of Massachusetts,* —— U.S. ——, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). Because of the interpretation of these statutory safeguards is of some importance, this Court takes the time to address the present case.

## BACKGROUND

Asher J. is an emotionally handicapped child whose parents enrolled him in the Alternative School in June of 1982 pursuant to the memorandum and order of Judge Nickerson of the Eastern District of New York in January 1982. This order which specifically incorporated the Special Master's Report No. 8 and appeared as *Jose P. v. Ambach, et al.,* 3 E.H.L.R. 553:299, was directed at overcoming the enormous delays by the City of New York in moving towards offering every handicapped child within its jurisdiction a "free appropriate education," the right to which was mandated by the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* The order authorized parents of handicapped children for whom an appropriate placement was not recommended by plaintiff's Committee on the Handicapped ("COH") within 60 days after the referral to the COH for classification and placement to enroll that child in a private school approved by plaintiff at plaintiff's expense.

After Asher's parents had enrolled him at the Alternative School pursuant to the Court order, plaintiff's COH recommended that Asher be classified as emotionally handicapped and placed in a class for such children at P.S. 99. Asher's mother, defendant Atara J., decided to avail herself of the right to apply for a review of the COH's recommendation by an impartial hearing officer as is accorded under 20 U.S.C. § 1415(b)(2).

By a decision dated March 8, 1983, plaintiff's hearing officer determined that the COH had not been properly constituted, nor had it followed proper procedures when it had made its initial placement recommendation; for example, no physician or parent

of another handicapped child was present and Atara J. was found not to have consciously waived her right to the presence of either of these parties. Plaintiff's Rule 3(g) Statement, Exhibit 4 at 2–3. More importantly, the hearing officer concluded that the COH had failed to demonstrate the appropriateness of the placement it had offered Asher for the 1982–83 school year and that the Alternative School was Asher's "current placement" and "an appropriate placement for Asher, with continued public funding, until and unless a suitable substitute is provided." *Id.* at 10. Accordingly, the officer ordered plaintiff to fund Asher's attendance at the Alternative School for the 1982–83 school year.

In May of 1983, plaintiff's COH reviewed Asher's case, again identified him as an emotionally handicapped child, and recommended that he be placed in a class for emotionally handicapped children at J.H.S. 303, a public school, for 1983–84. Again, Asher's mother sought review by an impartial hearing officer. This time, in a decision dated December 28, 1983, the hearing officer found that the proposed placement had been appropriate and also denied the parent's request for tuition reimbursement. Plaintiff's Rule 3(g) Statement, Ex. 6. Subsequently, Asher's mother appealed to the State Commissioner of Education for a review of this decision, a right accorded under 20 U.S.C. § 1415(b)(2).

By a decision dated April 2, 1984, the State Commissioner upheld the hearing officer's finding that the recommended placement was appropriate but reversed his ruling on the question of tuition reimbursement. Plaintiff's Rule 3(g) Statement, Ex. 1. The Commissioner held that since the Alternative School was Asher's "current placement" under 20 U.S.C. § 1415(e)(3) and New York Education Law § 4404(4), the equivalent of the federal law section, the Board of Education was responsible for Asher's tuition until its proposed placement was finally confirmed as appropriate by the Commissioner's April 2, 1984 decision. In this action, plaintiff seeks a reversal of the Commissioner's decision concerning its liability for Asher's tuition.

## STATUTORY SCHEME

Section 1415(a) of 20 U.S.C. states that any local educational agency receiving assistance under the EHA must "establish and maintain procedures in accordance with" § 1415(b)-(e) which "assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies or units."

■ One of these safeguards is the right given in 20 U.S.C. § 1415(b)(2) to seek review of a school agency's proposed placement. Another safeguard, provided in 20 U.S.C. § 1415(e)(3), is intended to maintain some stability and continuity in a child's school placement during the pendency of review proceedings; this section states:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.[1]

■ The language of the above section creates a duty on the part of the parents who avail themselves of the hearing and review provisions to maintain their handicapped child's current or "status quo" placement during the pendency of such proceedings. *Stemple v. Board of Education of Prince George's County*, 623 F.2d 893, 897 (4th Cir.1980). Maintenance of the status quo requires not only that the child remain in the same placement, but also that no change in financing of that placement

---

1. The equivalent of this section is found in New York's Education Law § 4404(4), which similarly states, "[d]uring the pendency of any proceedings [including both initial placements and appeals] ... the child shall remain in the then current educational placement of such child."

occur during the pendency of the proceedings. *Monahan v. State of Nebraska,* 645 F.2d 592, 597–98 (8th Cir.1981). Thus, a public school agency must maintain its financial commitment to continue to fund an educational placement prior to the commencement of proceedings. *Stacey G. v. Pasadena Independent School District,* 695 F.2d 949, 953 (5th Cir.1983).

■ Section 1415(e)(3) does not act to preclude parents from removing their child from an arguably inappropriate placement, but if the parents do violate the status quo provisions of Section 1414(e)(3) and place their child in a private school without the consent of the school agency, they do so at their own risk. *See, e.g., Rowe v. Henry County School Board,* 718 F.2d 115, 119 (4th Cir.1983); *Doe v. Brookline School Committee,* 722 F.2d 910, 918 (1st Cir. 1983); *Zvi D. v. Ambach,* 694 F.2d 904, 908 (2d Cir.1982); *Stacey G.,* 695 F.2d at 955. However, as the Supreme Court recently held, if during the review proceedings it is determined that the parents selected placement if appropriate under the Act, a district court is given the power under § 1415(e)(2) to grant such relief as it deems appropriate which "includes the power to order school authorities to reimburse parents for their expenditures." *Town of Burlington,* 105 S.Ct. at 2003.

## DISCUSSION

■ Plaintiff's argument that it should be relieved from the State Commissioner's ruling of liability for Asher's tuition for 1983–84 is predicated on several assertions. First, it asserts that the mere fact that the

hearing officer ruled that Asher's mother was entitled to reimbursement for the 1982–83 school year did not make the Alternative School his current educational placement. This first assertion is based on its second assertion that since Asher was "applying for initial admission to a public school," his current placement should have been the placement initially offered.[2] The Board's third assertion is that because the COH's recommendation should have been Asher's current placement, Asher's parent, by re-enrolling her son in the Alternative School, "unilaterally" rejected his current placement for 1983–84 and therefore assumed responsibility for financing his tuition for that school year.

■ Taking plaintiff's first two assertions, the Court finds that Asher's mother acted under the authority of the *Jose P.* order when she placed her child in a private school program approved by the City's Board of Education when the Board had failed to offer a public placement within 60 days of her application. Thus, because Asher's initial application for admission to public school was not acted upon soon enough, his initial placement was his "current placement" until the Board of Education offered Asher an "appropriate free program." Whether the Board of Education describes Asher's mother's action as "unilateral" or not, the description offers no relief. The fact remains she acted pursuant to an order directed at speeding up the Board of Education's processing of placements into appropriate public placement by forcing the Board to shoulder the

---

**2.** Even though the Court finds herein that his current placement was neither the first placement offered by the Board in the summer of 1982, nor the placement offered in May of 1983, the federal statute, 20 U.S.C. § 1415(e)(3) would also prevent the Court from finding that either of the placements offered Asher could have become his "initial placement" without his mother's consent. Notably the New York State law equivalent of the federal statute upon which the Board of Education relies does not contain this consent requirement. New York Education Law § 4404(4) provides that "if [a handicapped child is] applying for initial admission to a public school, [the child] shall, be placed in the

public school program until all such [placement evaluations and appeal] proceedings have been completed." Section 1415(e)(3) of 20 U.S.C. contains essentially the same language with the proviso that the child shall be placed "with the consent of the parents or guardian." To the extent that the New York statute's lack of the consent provision is a material variation from the federal version, the federal version must control because it sets forth the minimum procedural safeguards intended by Congress to be followed by State and local agencies receiving federal assistance when making educational placements for handicapped children.

burden of paying private school tuition for handicapped children in all cases where the Board had failed to place initially within 60 days.

Turning to plaintiff's third contention that Asher's mother assumed responsibility for the financing of her son's education for the year 1983–84 by rejecting the appropriate placement proposed in May of 1983, the Court finds this argument is simply contrary to the case law previously cited. Plaintiff's reliance on *Zvi D. v. Ambach*, 694 F.2d 904, and attempt to characterize Asher's mother's actions as unilateral are simply misplaced.

■ For the duration of the review proceedings, the Alternative School also became Asher's current placement. Had Asher's mother placed him in a school other than the Alternative School for 1983–84, she would have risked being held liable for the tuition, but this is not the situation here. Under § 1415(e)(3), Asher had a right to remain in the school placement he had prior to and during the review proceedings. Because the Board had been paying for his tuition prior to the review proceedings, under present case law the Board was required to continue paying in order to maintain Asher's current placement.

■ While the Board finally made an appropriate placement recommendation on its second attempt in May of 1983, it was not relieved of the duty to finance Asher's schooling until the review proceedings were completed in April of 1984. As defined in *Zvi D. v. Ambach*,

> [t]he time frame of the administrative ... proceedings under § 1415(e)(3) is not necessarily coterminous with the limits of the school year. Rather, it includes the time necessary to review and adjudicate the merits of a single "complaint" regarding evaluation or placement of the child.

694 F.2d at 908. Thus, the State Commissioner correctly held that the Board was liable not for the entire school year but only until the date of decision.

For the reasons given above, the Court hereby affirms the ruling of the State Commissioner and grants summary judgment in favor of the defendants.

SO ORDERED.