Catherine **EVANS**, Parent of a disabled child, F.Z., Plaintiff,

v.

The **BOARD OF EDUCATION OF THE RHINEBECK CENTRAL SCHOOL DISTRICT**, Defendant.

No. 95 CV 10102 (BDP).

United States District Court, S.D. New York.

April 16, 1996.

As Amended May 7, 1996.

RosaLee Charpentier, Family Advocates, Inc., New Paltz, NY, for Plaintiff.

Garrett L. Silveira, Shaw & Perelson, LLP, Highland, NY, for Defendant.

**MEMORANDUM DECISION
AND ORDER**

PARKER, District Judge.

Plaintiff Catherine Evans commenced this action on behalf of her son, Frank, seeking declaratory and injunctive relief and alleging that defendant Rhinebeck Central School District Board of Education ("the District") violated the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400 et seq., by failing to provide Frank with a "free appropriate public education" as required under the Act. On January 29, 1996, the parties appeared before this Court on Evans' motion for a temporary restraining order and preliminary injunction enjoining the District to maintain Frank at the Kildonan School pending the full and final review of these proceedings. This Court denied the TRO based on the evidence before it at that time, and ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. A hearing on the preliminary injunction application and on the merits was conducted on April 1–2, 1996. This Memorandum Decision and Order constitutes the findings of fact and conclusions of law on Evans' application for a preliminary injunction. The Court's decision on the merits of this action is forthcoming.

Frank is fifteen years old and dyslexic. In the fall of 1993, he was enrolled in a regular education seventh grade class in the District's Buckley Middle School. Evans referred Frank to the District's Committee on Special Education ("CSE") in November of that year, but the CSE declined to classify him as a child with a disability. Instead, he received remedial instruction by a special education teacher and counseling. On March 22, 1994, however, the CSE reconvened and

recommended that Frank be classified as learning disabled, receive consultant teacher services and be permitted to use testing modifications. Despite these efforts, at the end of that school year Frank received a grade of "Unsatisfactory" as a final grade in his language arts, social studies, science and mathematics courses.

The CSE met again on June 14, and prepared part of Frank's IEP for the 1994–95 school year. That summer, however, Evans enrolled Frank, at her expense, in the summer program of the Kildonan School, a private school for children with reading disabilities. In addition, she requested and reiterated her request for an impartial hearing in letters dated July 5 and September 1. A hearing was not scheduled at that time, but Evans did meet with the District for mediation on three occasions, early in September. By that time, Evans had enrolled Frank in the Kildonan School for the 1994–95 school year. Eventually a hearing was scheduled for September 21, but was adjourned with the consent of both parties until October 26.

On October 4, Evans met again with the CSE and requested that the CSE recommend placement at Kildonan. The CSE considered a report by a psychiatrist who opined that Frank had dyslexia secondary to a cerebellar-vestibular dysfunction and who recommended that Frank remain at the Kildonan School. The former Director of the Kildonan School attended the CSE meeting, discussed Frank's participation in the School's summer program, and recommended that Frank attend the Kildonan School as a residential student during the 1994–95 school year. The CSE, however, recommended placement in the District's school and amended Frank's IEP for the 1994–95 school year by, among other things, replacing the language laboratory with 1:1 multi-sensory instruction in reading and writing for 60 minutes four days per week, by Margaret Mabie, an individual whom the parties had discussed at their mediation. Disagreeing with the CSE's placement recommendation, Evans insisted that the hearing scheduled for October 26 proceed.

As it turned out, Mabie was not available to provide services to Frank so that the District was unable to implement the CSE's recommendations. On October 26, the parties met just prior to the commencement of the impartial hearing. At that meeting, the parties came to an agreement that obviated the need for a hearing. The terms of that agreement are highly disputed, but the result was that the impartial hearing was called off and Frank continued at the Kildonan School at the expense of the District. The parties asked the hearing officer to retain jurisdiction in the matter, in the event that there was a subsequent disagreement.

On Nov. 7, the District hired a substitute multi-sensory reading and writing instructor, Constance Moore. Sometime after November 14, however, Evans informed the CSE chairperson that she had spoken with Moore and concluded that she was not qualified to provide Frank with the instruction he required. In a letter dated December 5, the CSE chairperson informed Evans that the District would no longer be responsible for paying Frank's tuition at the Kildonan School. In response, Evans requested another meeting of the CSE, and in a letter dated January 4, 1995, she requested an impartial hearing.

The CSE met on January 19 and amended Frank's IEP to provide Frank with five periods of 40 minutes of multi-sensory reading and writing instruction per week, rather than four periods of 60 minutes of such instruction. It also deleted Mabie's name and added Moore's name as the child's instructor. Evans reiterated that she would pursue the impartial hearing, which began on February 8. The District agreed at that time to pay Frank's tuition at the Kildonan School until the hearing officer rendered his decision.

The impartial hearing concluded on June 6. In his decision, dated July 10, the hearing officer found that the CSE had complied with the procedural requirements for preparing Frank's IEP for the 1994–95 school year and that the IEP was appropriate. Evans appealed this decision to the State Review Officer. In a decision dated September 29, 1995, the State Review Officer dismissed the appeal on the grounds that the IEP proposed

by the CSE was appropriate and that it was available as of January 19, 1995, when the CSE amended Frank's IEP by inserting Moore's name for Mabie's name.

With the exception of a couple weeks following the District's decision to terminate its tuition payments on December 5, 1994, Frank attended the Kildonan School at the District's expense from October 1994 until December 1995. Except for two unsuccessful attempts to send Frank back to the District's school in January and February of 1996, Frank has not attended any school since January 1996.

■ When a parent is dissatisfied with the CSE recommended educational placement, as Evans was here, the parent may appeal. *See* 20 U.S.C. § 1415. During the pendency of any administrative or judicial proceedings, the child remains at his current educational placement, be it public or private, unless the parties agree otherwise.[1] *See* 20 U.S.C. § 1415(e)(3). This provision of the IDEA constitutes an automatic preliminary injunction. "The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Zvi D. v. Ambach,* 694 F.2d 904, 906 (2d Cir. 1982).

■ Under the statute, the inquiry focuses on identifying "the then current educational placement," and on who should pay for it because "implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Zvi D.,* 694 F.2d at 906 (citation omitted). Section 1415(e)(3) "is intended to maintain some stability and continuity in a child's school placement during the pendency of review proceedings." *Board of Education v.*

*Ambach,* 612 F.Supp. 230, 233 (E.D.N.Y. 1985).

Evans contends that the Kildonan school was Frank's current educational placement because he was placed there by mutual agreement of the parties on October 26, 1994, and continued there until the District's unilateral attempt to cut off funds, which resulted in her request on January 4, 1995 for an impartial hearing. The District argues, on the other hand, that the Kildonan school is not and never was Frank's current educational placement because on October 26 it only agreed to fund him at Kildonan temporarily.

*Zvi D.* held that because "[p]ayment and placement are two different matters," an agreement by a school district to pay tuition at a private school for a limited time period does not constitute a "placement" at the private school. *Zvi D.,* 694 F.2d at 908. Zvi's parents had contested the Committee on the Handicapped's ("COH") initial public education placement recommendation. Before the appropriateness of the COH's recommendation could be reviewed, the Board of Education agreed to postpone the review until the end of the school year and fund Zvi at the private school where his parents had enrolled him. The parties entered into a stipulation that expressly limited the Board of Education's funding obligation to that school year. The *agreement* clearly stated: "This funding is being provided with the stipulation that a review of Zvi's classification will be conducted at the end of the current year with a view toward placing him in an appropriate public program in September, 1979." *Zvi D.,* 694 F.2d at 907.

Here, however, there is no writing setting forth the terms of the agreement reached on October 26, 1994. There is no documentary evidence that the agreement was confined to funding. Nor is there any evidence that funding was limited to a specific school year or definite time period. Four people were present at the meeting on October 26—Ev-

---

1. Section 1415(e)(3) provides that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child . . ." 20 U.S.C. § 1415(e)(3).

ans, Evans' attorney, Dr. Zeisler (who was both principal of the Buckley Middle School and chairperson of the CSE), and the District's attorney—two of whom testified.

According to Evans' testimony, Frank was placed at Kildonan by agreement of the parties until an appropriate public school placement could be developed. Evans testified that at the meeting the District agreed that its IEP was inappropriate, that it could not currently provide an appropriate program, but that, with her cooperation, it would develop a program similar to Kildonan's program in the public school setting. In the meantime, according to Evans, the District agreed that Kildonan was an appropriate place for Frank to be and agreed to pay its bill. Evans also testified that, in exchange, she agreed to withdraw her request for a hearing, and thereby her request for reimbursement of Frank's tuition at the Kildonan 1994 summer program and a bill for psychiatric evaluation of Frank.

According to Dr. Zeisler's testimony, the District agreed to fund Frank at Kildonan for an indefinite period of time, that is, until it could hire another multi-sensory instructor. Dr. Zeisler testified that at the October 26 meeting, she agreed to find another tutor in multi-sensory instruction and that the frequency of instruction would be increased to five times a week for 40 minutes. The District also agreed, according to Dr. Zeisler, to pay tuition for Frank at Kildonan until it was able to implement the IEP, that is, until it hired another multi-sensory instructor. Dr. Zeisler further testified that the CSE was not reconvened to review the agreed upon terms of this agreement, such as the replacement of the multi-sensory instructor, until January 19, 1995.

*Jacobsen v. District of Columbia Board of Education*, 564 F.Supp. 166 (D.D.C.1983) held that any settlement between the parties must be spelled out in detail, as it was in *Zvi D.*, otherwise the Court would assume that the placement, whether decided upon by administrative determination or by agreement of the parties, constituted the child's current educational placement. *See Jacobsen*, 564 F.Supp. at 171–72. Because the District of Columbia Public Schools ("DCPS") had advised the parents that it had made "an administrative decision to assume financial responsibility" for the private school tuition, without limiting the placement to a particular school year or providing that another placement would be considered for the following school year, *Jacobsen* held that "the parents were free to assume that the DCPS would continue to fund [the child] at [the private school] until a change in the placement made after Notice of a Proposed Change in Educational Program, and the exhaustion of any proceedings challenging a new proposed placement." *Jacobsen*, 564 F.Supp. at 171–72. *See also Saleh v. District of Columbia*, 660 F.Supp. 212 (D.D.C.1987) (holding that limitations or reservations of rights must be expressly stated or court will assume placement was current educational placement).

Here, the terms of the agreement were not spelled out in detail, nor memorialized in any writing. Moreover, even if this Court were to accept as true the District's version of its terms, the agreement to fund Frank at Kildonan was not bound by a definite time limitation.[2] The facts of the matter are that as a result of the October 26 agreement between the parties the hearing was called off, Frank continued at Kildonan, and the District assumed full responsibility for his tuition, for which the District was billed directly. In addition, the CSE was not reconvened to amend Frank's IEP to reflect the changes agreed upon, such as the replacement of the multi-sensory instructor and the frequency of such instruction, until January 19, 1995. Thus, the program proposed by the CSE was not even available during the 1994–95 school year until January 19, 1995.

Under these circumstances, this Court concludes that, when Evans requested the impartial hearing on January 4, 1995, the Kildonan School was Frank's "then current educational placement." This conclusion is

---

2. The Court does not credit the District's version of events over Evans' testimony. The Court found both Dr. Zeisler's transcribed testimony and Evans' testimony credible. Quite obviously, there was a misunderstanding as to what the terms of the agreement were, which only underscores the need for a written record of these agreements.

not altered by the District's unilateral attempt in December to cut off funding to Kildonan, see Zvi D., 694 F.2d at 906, nor by its subsequent agreement in February of 1996 to do what it was already required to do under the IDEA—maintain Frank at Kildonan pending resolution of the administrative proceedings.[3] Because the IDEA requires that a child remain at his "then current educational placement" pending resolution of both administrative and judicial proceedings, see 20 U.S.C. § 1415(e)(3), the District is required to maintain Frank at Kildonan School pending resolution of this dispute.

In conclusion, plaintiff's motion for a preliminary injunction is granted. It is hereby ordered that defendant shall maintain Frank at the Kildonan School pending this Court's decision on the merits.

SO ORDERED.

---

3. This conclusion is also not altered by the State Review Officer's ruling that the October 26 agreement could not have constituted a placement because "there was no IEP developed or approved by the CSE to reflect the agreement," and therefore Frank's "last mutually agreed upon placement was in [the District's] schools pursuant to the March 22, 1994 IEP." The State Review Officer does not cite any authority in support of the proposition that a "current educational placement" must be reflected in an IEP. This Court is not aware of any such authority. To the contrary, the IDEA specifically states that during the pendency of administrative and judicial proceedings, the child remains at his current educational placement, "unless the State or local educational agency and the parents or guardian otherwise agree," 20 U.S.C. § 1415(e)(3), and courts have found a "current educational placement" in programs or schools that were not recommended in any IEP or approved by the CSE. See, e.g., Saleh, 660 F.Supp. at 213–15; Board of Education v. Ambach, 612 F.Supp. 230, 234–35 (E.D.N.Y.1985); Jacobsen, 564 F.Supp. at 171–72.