Janice DOE, by Next Friend Sally DOE; Sally Doe and Sam Doe, as parents of Janice Doe, Plaintiffs,

v.

INDEPENDENT SCHOOL DISTRICT NO. 9 OF TULSA COUNTY, OKLAHOMA (UNION PUBLIC SCHOOLS), Defendant.

96–CV–613–H.

United States District Court, N.D. Oklahoma.

Aug. 8, 1996.

Judith Ashbaugh, LeBlang & Clay, Tulsa, OK, Donald W. Jones, Jason N. Shaffer, Hulston Jones Gammon & Marsh, Springfield, MO, for plaintiffs.

John E. Howland, Andrea R. Kunkel, Rosenstein Fist & Ringold, Tulsa, OK, for defendant.

*ORDER*

HOLMES, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Docket # 4) pursuant to 20 U.S.C. § 1415(e)(3). A hearing was held in this matter on July 10–11, 1996.

*Findings of Fact*

1. Janice Doe is a minor child who is eligible for special education and related services and resides in the Union Public School District ("Union"). She enrolled in kindergarten at Union in the fall of 1991.

2. In January 1992, Janice's mother, Sally Doe, requested a due process hearing against Union under the Individuals with Disabilities Education Act ("IDEA"), challenging the educational placement of her daughter. A hearing was commenced before an independent hearing officer selected by the Oklahoma State Department of Education.

3. On March 16, 1993, prior to the conclusion of the due process hearing, Sally Doe and Union entered into a settlement agreement ("the Agreement"). At the time the Agreement was executed and thereafter, through May 1996, Janice was attending and has attended a private school in the Tulsa area (the "Private School").

4. The Agreement provided in pertinent part as follows:

2. [Janice] will be placed by agreement at [Private School] for the 1993–94 and 1994–95 school years. When and if the

**760**

services are provided by [Private School], the School District shall bear the following expenses arising from [Janice's] placement at [Private School]:

(a) [Janice's] tuition, materials and related services at [Private School] for the school years 1993–94 and 1994–95 and

(b) extended school year services for [Janice] at [Private School] during the summers of 1993 and 1994, as deemed appropriate by [Janice's] I.E.P. team,

subject to the following limitations. The School District will bear the expenses identified in Paragraph 2(a) and (b) up to a maximum of nine thousand dollars ($9,000) during the fiscal year period from July 1, 1993 through June 30, 1994 and from July 1, 1994 through June 30, 1995. Private School will invoice the School District, and the School District will pay Private School directly for these expenses. Regardless of the date an invoice is received, that invoice will be deemed due and payable only during the fiscal year in which the invoiced service is provided. Any amounts invoiced by Private School that exceed nine thousand dollars ($9,000) during either fiscal year period will be the sole responsibility of [Janice's parents].

Joint Ex. 1 at 2.

5. Pursuant to the terms of the Agreement, Union paid for the tuition and related services at Private School through the end of May 1995.

6. On May 25, 1995, Dr. Bonnie Johnson, Union's School Psychologist, sent a letter to Sally Doe, which stated in relevant part as follows:

According to the settlement agreement signed with the Union Public School on March 19, 1993, all financial obligations of this school district cease June 30, 1995. We will conduct a Review/IEP meeting following [Janice's] re-evaluation to determine appropriate school placement and services for next year.

Joint Ex. 10 at 2.

7. Union did not pay for any tuition and related services for Janice during the summer of 1995 or the 1995–96 school year.

8. On September 13, 1995, Sam and Sally Doe requested a due process hearing concerning Janice's educational placement. Joint Ex. 17. Such hearing was commenced on April 22, 1996, and concluded on June 17, 1996. At the conclusion of the hearing, the hearing officer set a briefing schedule. The hearing officer has not yet issued a ruling in the matter.

9. Union contends that it is under no obligation to pay either for any tuition and related services incurred by Janice at Private School during the 1995–96 school year or for any tuition and related services to be incurred by Janice at Private School during the 1996–97 school year.

*Conclusions of Law*

1. The IDEA gives parents a right to an impartial due process hearing on complaints with respect to the educational placement of their handicapped children. 20 U.S.C. § 1415(b)(2). The act also provides for state or federal judicial review of final administrative decisions. *Id.* § 1415(e)(2).

2. The IDEA contains a "stay put" provision which mandates that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child...." 20 U.S.C. § 1415(e)(3)(A).

3. The Supreme Court has described the language of section 1415(e)(3) as "unequivocal," in that it states plainly that "'the child *shall* remain in the then current educational placement.'" *Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988) (quoting 20 U.S.C. § 1415(e)(3)).

4. Section 1415(e)(3) is, in effect, an automatic preliminary injunction. *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir.1982). "The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Id.*

5. In *Zvi D.*, the court recognized that, for purposes of determining a child's "current educational placement", "[p]ayment and placement are two different matters." 694 F.2d at 908. In that case, the child's parents and the public school entered into an agreement whereby the school would pay for the child's private education for a definite period of time pending an initial evaluation of the child by the public school. The agreement specifically stated, "This funding is being provided with the stipulation that a review of Zvi's classification will be conducted at the end of the current year with a view toward placing him in an appropriate public program in September, 1979." *Id.* at 907. Because the agreement expressly limited the public school's financial responsibility for private school tuition to the 1978–79 school year, the Second Circuit held that the private school was not Zvi D.'s "current educational placement" within the meaning of section 1415(e)(3).

6. In *Jacobsen v. District of Columbia Board of Education*, 564 F.Supp. 166 (D.D.C. 1983), the court held that absent an express agreement between the parents and the public school detailing the interim nature of the placement, the court would assume that the child's actual current educational placement constituted the child's "current educational placement" under the statute. Rejecting the public school's proposed placement of their child, the *Jacobsen* parents unilaterally placed their child in a private school and commenced due process proceedings in August 1981. In February 1982, the public school advised the parents that it had made "an administrative decision to assume financial responsibility" for the child's private school education. *Id.* at 168. The letter noted that "[f]urther recommendations will be rendered as deemed appropriate." *Id.*

Distinguishing *Zvi D.*, the *Jacobsen* court held that the private school was the child's current educational placement because the notification to the parents did not specifically limit the placement to the 1981–82 school year or put the parents on notice that another placement would be considered for the 1982–83 school year. *Id.* at 171. The court concluded,

Since [the public school] failed to limit its financial responsibility, the parents were free to assume that [the public school] would continue to fund [the child] at [the private school] until a change in the placement made after a Notice of a Proposed Change in Educational Program, and the exhaustion of any proceedings challenging a new proposed placement. Accordingly, [the private school] was [the child's] "current placement" in 1981–1982.

*Id.* at 171–72.

7. In *Evans v. Board of Education of the Rhinebeck Central School District*, 921 F.Supp. 1184 (S.D.N.Y.1996), the public school and parents reached an agreement that the school would pay for the child's private school education. The unwritten agreement did not include a definite time limitation. *Id.* at 1188. Distinguishing *Zvi D.*, the court concluded that the private school was the "current educational placement" of the child for purposes of section 1415(e)(3).

8. The Agreement in the instant case specifically covered the 1993–94 and the 1994–95 school years. The Agreement was silent on any plans for Janice extending past May of 1995. Thus, the Agreement did not expressly place the parents on notice in the manner and to the extent required by the IDEA that another placement would be considered beginning with the 1995–96 school year. Because Union failed to state affirmatively in the Agreement that Janice's placement at Private School would be re-evaluated at the end of the 1994–95 school year with a view toward placing her in an appropriate public program for the 1995–96 school year, the parents were entitled to assume that Union would continue to fund Janice's Private School education until such time as another placement was either agreed to by the parties or dictated by administrative and judicial proceedings.

9. The Court thus concludes that Private School is Janice's "current educational placement" for purposes of section 1415(e)(3). Pursuant to the terms of that provision, it is hereby ordered that Union shall pay for Janice's tuition and related services as set forth in the Agreement during the pendency of any

state administrative proceedings and any subsequent judicial proceedings until such time as Janice's placement is changed in the manner prescribed by law. Plaintiffs' Motion for Preliminary Injunction (Docket # 4) is hereby granted.

**IT IS SO ORDERED.**