560 F.Supp. 701 (1983)
Brian BLAZEJEWSKI, By and Through Paul BLAZEJEWSKI and June Blazejewski, his parents and next friends; and Western New York Protection and Advocacy Office, Neighborhood Legal Services, Inc., Plaintiffs,
v.
The BOARD OF EDUCATION OF the ALLEGANY CENTRAL SCHOOL DISTRICT and Austin Leahy, Jr., as Superintendent of the Allegany Central School District, Defendants.
No. CIV-81-258C.
United States District Court, W.D. New York.
March 31, 1983.
*702 Western New York Protection and Advocacy Office for the Developmentally Disabled Neighborhood Legal Services, Inc. (David A. Munro, Buffalo, N.Y., of counsel), for plaintiffs.
Shane & Franz, Olean, N.Y. (David M. Franz, Olean, N.Y., of counsel), for defendants.
CURTIN, Chief Judge.
On February 28, 1983, plaintiffs filed a motion for a preliminary injunction, which seeks an order directing defendants to immediately implement a decision of the Commissioner of the New York State Education Department [Commissioner] requiring defendants to identify Brian Blazejewski as a handicapped student and to arrange for the provision of special education instruction in a learning disabilities resource room.
This court has jurisdiction under the Education for All Handicapped Children Act, 20 U.S.C. § 1415(e)(4). At this time, plaintiff Brian Blazejewski is a 17-year-old student in the eleventh grade.
After this action was instituted in 1981 with a request for injunctive relief, the court required the parties to exhaust administrative remedies. Thereafter, the Hearing Officer's September, 1981, decision was appealed to the Commissioner, who noted on April 30, 1982, that:
(1) Allegany had not performed a proper educational evaluation of Brian, since it was relying upon classroom performance and group tests, as opposed to individual testing results, as required by federal and state law; (2) an appropriate educational placement for Brian must be provided in the least restrictive environment; and (3) Allegany should consider providing Brian with special education resource room instruction, which should include a daily reading component as well as instruction in cursive writing and math.
He remanded to the defendant Allegany School Board, with instruction to perform an adequate evaluation of the plaintiff's education needs and to develop a proper Phase I Individualized Education Plan [IEP]. In spite of the Commissioner's urging, Allegany's Committee on the Handicapped [COH] decided to declassify Brian as learning disabled, and found that special support services provided at the discretion of the classroom teacher would be adequate.
Another impartial hearing was requested and held in September of 1982 before Dr. G. Susan Gray. Dr. Gray concluded that the plaintiff is learning disabled, and she ordered *703 Allegany to provide him with a special education program.
The Board's appeal to the Commissioner was dismissed. The Commissioner found, on January 6, 1983:
In view of this child's age, grade and assessed ability, those skills which the tests identified to be at and below a fifth grade level clearly indicate that the child has a specific learning disability in written expression and word recognition....
Petitioner contends that the impartial hearing officer's decision should be set aside on the ground that the student is achieving passing grades and is advancing from grade to grade....
It is clear from the record before me that this child has a specific learning disability. While the child may not require special class placement in a BOCES program, resource room services are necessary to remediate the learning disability problems which have been identified....
In January, 1983, plaintiffs' attorney wrote to the defendant Board requesting that the COH schedule a meeting as soon as possible to discuss the service to be provided to the plaintiff. On February 3, 1983, the Board's attorney replied, stating that the Board intended to commence an Article 78 proceeding within four months of the Commissioner's decision and that in view of the status quo provision of the New York Education Law, it would be inappropriate to begin implementation of the Commissioner's decision until all proceedings are completed. The attorney held out the hope that perhaps the parents and the Board could consent to a change in Brian's program. When the Board took no action to implement the Commissioner's direction, this motion for a preliminary injunction followed. Plaintiffs urge that under the standards of the Second Circuit, set forth in Caulfield v. Board of Education, 583 F.2d 605, 610 (2d Cir.1978), plaintiffs are entitled to preliminary injunctive relief at this time.
In response to the motion, defendants have filed an affidavit of Austin Leahy, Jr., Superintendent of Schools of Allegany Central School. Plaintiffs' counsel has supplied the court with copies of correspondence between the Superintendent and Commissioner Ambach in early February. It is clear from the content and tenor of Mr. Leahy's letter that the school district does not intend to implement the order of the Commissioner at this time. Defendants argue that the Hearing Officer and the Commissioner gave undue weight to individual testing "... while ignoring the assessment of teachers who have daily worked with this youngster over a period of years ...." Defendants insist they have a right to challenge the Commissioner's findings and oppose the plaintiffs' motion in an Article 78 proceeding.
Although the Leahy affidavit focuses on Brian's school performance, it appeared to the court at oral argument that defendants are primarily concerned with expanding state procedural due process for school boards. Of course, the Superintendent is free to challenge the procedures used by the Commissioner to review decisions of the Boards of Education, but this may easily be done in an action for declaratory judgment, without interfering with the Commissioner's direction in this case. Fishman v. Ambach, No. 82-898, at p. 5 (W.D.N.Y. Feb. 11, 1983) (order denying injunctive relief), citing Aubin v. Biggane, 51 A.D.2d 1054, 381 N.Y.S.2d 533 (1976); Sacolick v. Cagliostro, 50 A.D.2d 875, 377 N.Y.S.2d 153 (1975), aff'd, 42 N.Y.2d 861, 397 N.Y.S.2d 791, 366 N.E.2d 878 (1977). In view of this alternative, the immediate unfairness to Brian is obvious when this unnecessary delay will compromise the decision of the Commissioner, the wishes of the parents, and the educational betterment of the student.
Plaintiffs have adequately shown that irreparable injury will result if the designated services are withheld. If relief is not afforded at this time, the order of the Commissioner will be frustrated, Brian's present reading deficiency will be left without special assistance, and he will continue with deficient communication skills. It is not necessary to find that Brian will become functionally illiterate; it is enough to recognize that the Hearing Officer's report *704 indicates that the special services will improve Brian's literacy problem. Therefore, on the record before this court, a continued deprivation of those services will work sufficient injury to the plaintiff to require the issuance of this order.
During oral argument, defendants' counsel conceded that the requested special service would not significantly disrupt the operation of the school district, nor place it under a heavy financial burden. Therefore, the balance of hardships tips decidedly toward the plaintiffs in their request for preliminary relief.
In support of their motion, plaintiffs have shown likelihood of success on the merits. Section 1415(e)(3) provides that until the proceedings are completed, the child shall remain in his current educational placement unless the State or local educational agency and the parents agree to a program. See generally, Zvi D. v. Ambach, 694 F.2d 904, 906 n. 4 (2d Cir.1982).
Under the circumstances, the decision of the Hearing Officer, as implemented by the Commissioner of Education, constitutes an "agreement" with the plaintiffs that Brian be provided special educational services. At oral argument, plaintiffs' counsel said that his clients agree to the services directed by the Commissioner. Plaintiffs' position is supported by a policy letter authored in 1978 by the Bureau of Education for the Handicapped, United States Department of Education (appended to Docket Item 12). In its letter, the Bureau informed the Commissioner in Massachusetts that the latter could implement a hearing decision when the Department of Education and the parents agreed that the decision should be implemented, even though the local Board objected to the procedure. The Bureau opinion states:
As we understand your concerns, you believe it is important for the Massachusetts Department of Education [MDOE] to be able to enforce its hearing decisions without waiting for any judicial proceedings to be completed. You indicated this would create the potential for great harm to children, because it could mean a child might remain in an inappropriate program for years, when a party appealed the decision of the hearing officer.
The Bureau could approve a State procedure which allowed the Massachusetts Department of Education to implement the decision of a hearing officer when the Department and a parent of the handicapped child agreed that the decision should be implemented, but the local educational agency disagreed with the decision and was appealing the decision in the courts. However, the MDOE could not implement a decision which the parents were appealing in the courts.
The Bureau based its conclusion on the waiver provision in section 1415(e)(3), concluding that:
This interpretation is based on § 615(a)(3) of the Education of the Handicapped Act [§ 1415] which provides that unless the State or local educational agency and the parents agree, the child must remain in the current educational placement during the pendency of any administrative or judicial proceeding.
It is true that "such policy interpretations are not necessarily binding, but they are entitled to substantial weight." Gebhardt v. Ambach, Civ. 82-224E, at p. 30 (W.D. N.Y. Feb. 22, 1983) (order granting and denying preliminary injunction). The school district has been unable to cite any authority to persuade this court that the Bureau's position will not provide the sensible conclusion in this instance. Certainly, the Commissioner and Brian's parents have reached a consensus with respect to Brian's needs.
The School Board's criticisms about the evaluation of school performance was addressed in Board of Education v. Rowley, ___ U.S. ___, 102 S.Ct. 3034, 3040, 73 L.Ed.2d 690 (1982). The Court stated that school performance should be considered as a factor, but it was only one factor to be considered. Rowley, 102 S.Ct. at 3049, n. 25. In Brian's case, the Commissioner refused to consider school performance as the sole basis for disrupting the recommendation of the Hearing Officer. Further, the *705 unequivocal direction expressed in Rowley is a hands-off role for the courts where the Commissioner of the State has chosen an "appropriate educational theory in a proceeding conducted pursuant to § 1415(e)(2)." Rowley, 102 S.Ct. at 3051 and n. 30.
It should also be noted that the Rowley holding was based upon facts much different from those presented in this case. In Rowley, the plaintiff was a deaf student who had minimal residual hearing but was an excellent lip-reader. The school district provided her with an FM hearing aid, speech therapy, and instruction from a tutor for the deaf for one hour each day. Nevertheless, her parents asserted that to insure that she was being provided a free appropriate public education pursuant to the EAHCA, she should be provided with a qualified sign language interpreter in all her academic classes. The Supreme Court held that a free appropriate public education consists of access to specialized instruction and related services which are individually designed to provide "educational benefit" to the handicapped child. Rowley, 102 S.Ct. at 3048. The Court emphasized that it was not "attempt[ing] ... to establish any one test for determining the adequacy of educational benefits conferred upon all children covered by the Act." Rowley, 102 S.Ct. at 3049.
We do not hold today that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a "free appropriate education."
Rowley, 102 S.Ct. at 3049, n. 25.
Therefore, the Hearing Officer and the Commissioner were also entitled to consider that while Brian is passing his subjects, he is achieving rather low marks in certain basic courses. He also scores low on certain individualized tests. Although he is in the eleventh grade and possesses an average-to-high I.Q., he lacks many of the basic survival skills needed to function in the outside world.
Plaintiffs' request for a preliminary injunction is granted. The School Board is ordered to comply with the direction of the Commissioner within 10 days of this order.
For the reasons set forth in this decision, an application for a stay to this court will be denied.
So ordered.