NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1632 and 11-1764
_____

J.E., by and through his parents, J.E. and A.E.;
J.E.; A.E., in their own right,
Appellants in No. 11-1632

v.

BOYERTOWN AREA SCHOOL DISTRICT
Appellant in No. 11-1764
_____

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-10-cv-02958)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2011

Before:  RENDELL, AMBRO and NYGAARD, Circuit Judges

(Opinion Filed : November 21, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

        J.E. and his parents, J.E. and A.E., appeal a District Court order entering judgment

on the record in favor of Boyertown Area School District on their Individuals with

Disabilities Education Act (IDEA) claim.  The District Court affirmed a Pennsylvania

Special Education Hearing Officer's finding that the Individualized Education Plan (IEP) the School District offered J.E. for the 2009-2010 school year provided a free appropriate public education (FAPE) and rejected J.E.'s parents' request for continuing reimbursement of J.E.'s tuition at the private Hill Top Preparatory School.

The School District cross appeals an earlier District Court order requiring the School District to pay tuition and transportation costs for Hill Top under the IDEA's "stay-put" provision, 20 U.S.C. § 1415(j), while the case was pending in the District Court. The School District also asks us to order J.E.'s parents to reimburse it for costs it has paid to Hill Top on J.E.'s behalf.

For the following reasons, we will affirm the judgment and orders of the District Court in all respects and deny the School District's request for reimbursement.

## I.

J.E. is a twelfth-grade student who is eligible for special education services based on diagnoses including Asperger's Syndrome; reading, mathematics, and writing disorders; and a learning disorder related to auditory and visual processing. Between 2001 and 2008, he attended the private Vanguard School pursuant to an IEP entered into and agreed to by the School District and J.E.'s parents.

In August 2008, before the 2008-2009 school year, J.E.'s parents removed him from Vanguard and enrolled him at the private Hill Top Preparatory School without the consent of the School District. Hearing Officer Anne Carroll later determined that J.E.'s placement at Vanguard for the 2008-2009 school year was inappropriate and that the parents' action in moving J.E. to Hill Top was appropriate. Accordingly, she ordered the

2

School District to reimburse J.E.'s parents for tuition payments made to Hill Top for that school year. The School District appealed that determination to the district court, and the parties ultimately resolved that dispute in a settlement.

In July 2009, the School District proposed a new IEP for J.E. for the 2009-2010 school year. The proposed IEP called for J.E.'s transfer from Hill Top to the newly developed Autism Support class at Boyertown Area High School. It offered additional, individual support, including one-on-one classroom assistance, and services to ease J.E.'s transition between schools.

J.E.'s parents rejected the proposed IEP and sought a due process hearing. Hearing Officer William Culleton resolved the dispute in favor of the School District, finding that the proposed IEP was appropriate for J.E., and J.E.'s parents appealed to the District Court. In an October 12, 2010 order, the District Court granted J.E.'s parents' motion for continued payment of J.E.'s tuition and transportation costs at Hill Top under the IDEA's stay-put provision, 20 U.S.C. § 1415(j). Both parties filed motions for judgment on the record and, on February 8, 2011, the District Court affirmed Hearing Officer Culleton's decision that the proposed IEP was appropriate. This appeal followed.

## II.

Under the IDEA, states that receive federal education funding are required to provide disabled children with free appropriate public education; they do so by designing and implementing an IEP for each qualifying child. *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009). Parents may unilaterally remove their disabled child from the public school system, place him or her in a private school, and

3

seek reimbursement for the cost of the alternate placement, but a court may only "grant tuition reimbursement if the School District failed to provide the required FAPE and the parents sought an appropriate private placement." *Id.* at 242. In this case, both Hearing Officer Culleton and the District Court found that the School District's proposed IEP was appropriate, and, therefore, that J.E.'s parents were not entitled to further tuition reimbursement. We agree.

**A.**

J.E. and his parents first argue that the District Court applied an incorrect legal standard in rejecting their tuition reimbursement claim. Specifically, they contend that the District Court should have evaluated the School District's IEP according to the factors enumerated at 20 U.S.C. § 1414(d)(4)(A), particularly the factors that refer to the child's progress under an existing IEP. Under their theory, applying that standard would have yielded a different result because J.E. was making good progress at Hill Top and his placement there was appropriate.

This argument fails as a matter of law. Contrary to J.E.'s and his parents' suggestion, § 1414(d)(4)(A) does not provide that a student's placement may not be changed if the student is meeting or exceeding his annual goals; instead, it says only that an IEP must be revised "as appropriate to address . . . any *lack* of expected progress toward the annual goals and in the general education curriculum, where appropriate . . . ." 20 U.S.C. § 1414(d)(4)(A)(ii)(I) (emphasis added). Moreover, J.E.'s and his parents' argument ignores a fundamental and well settled principle of the IDEA: a school district is required to provide a free appropriate public education, not to maximize each

4

individual child's educational potential. *Polk v. Cent. Susquehanna Intermediate Unit*, 853 F.2d 171, 178 (3d Cir. 1988). Thus, there is no legal support for the position J.E. and his parents urge. The relevant consideration is whether the School District has provided a free appropriate public education — in other words, whether the IEP provides for an "education that would confer meaningful benefit," *id.* at 184, which is the standard that the District Court articulated and applied, *see J.E. v. Boyertown Area Sch. Dist.*, 2011 WL 476537, at *3-4, 11 (E.D. Pa. Feb. 8, 2011).[1]

**B.**

J.E. and his parents also challenge the District Court's determination that the School District's IEP is appropriate. Whether an IEP is appropriate is a question of fact, *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003), which we review for clear error, *Mary T.*, 575 F.3d at 242. A district court must afford "due weight" to the conclusions of the ALJ (in this case, Hearing Officer Culleton), considering the ALJ's fact findings "prima facie correct" and explaining its reasons for departing from them. *Id.* at 241 (internal quotation marks omitted).

The District Court carefully considered and rejected each of the points J.E. and his parents raise on appeal. Most significantly, the District Court agreed with J.E. and his parents that the Hearing Officer was required to consider the impact of the proposed change in J.E.'s educational placement from Hill Top to Boyertown Area High School's

---

[1] To be clear, we are not saying that the child's current placement is irrelevant to the analysis. On the contrary, we have held that, "if a change in [a student's] placement will be detrimental, this is a factor in determining whether the new placement will achieve a meaningful educational benefit." *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 272 (3d Cir. 2003).

Autism Support class. It rejected their assertion that any difficulties J.E. might experience with a transition undermined the appropriateness of the IEP, however, because it found that the Hearing Officer and the IEP properly took those concerns into account. *J.E.*, 2011 WL 476537, at *10-11. J.E. and his parents also complain that the Hearing Officer's determination ignored their experts' testimony. The District Court acknowledged that the experts' testimony suggested that Hill Top "would likely be a better placement for J.E.," but found that the Hearing Officer appropriately considered that testimony in determining that the IEP would provide J.E. with adequate support and "sufficiently meet his education levels," thereby satisfying the IDEA. *Id.* at *11. On this record, the District Court found no basis "to supplant its judgment" for that of the Hearing Officer. *Id.* We discern no clear error in its reasoning or the result.

**III.**

The District Court also did not err in granting J.E.'s and his parents' motion for a preliminary injunction ordering the School District to reimburse J.E.'s parents for J.E.'s tuition and transportation costs at Hill Top through the completion of the District Court proceedings. The IDEA's stay-put provision states, in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.

20 U.S.C. § 1415(j). Although this provision does not specifically address which party bears the cost of maintaining a student's "then-current educational placement," also known as a "pendent placement," or define the scope of the "proceedings" to which it

6

applies, we have held that it requires a school district to pay for a private pendent placement at least through the date of a district court's final order in an IDEA case. *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996).[2]

There is no question that Hill Top, where J.E. was enrolled when the dispute over the proposed 2009-2010 IEP arose, constituted J.E.'s "current educational placement" for purposes of this provision. *See Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) (current educational placement is "'the operative placement actually functioning at the time the dispute first arises'" (quoting *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990))). Thus, the District Court's order directing the School District to continue paying J.E.'s tuition and transportation costs for Hill Top through the completion of the action in that court was correct and consistent with our precedent.

The School District's arguments to the contrary are puzzling. It asserts, primarily, that Hearing Officer Culleton, in his April 1, 2010 order, granted the School District's request to "cease pendency" as of the date of his decision, and that the District Court erred in ignoring the Hearing Officer's conclusion in that respect. But the Hearing Officer's order determined only that the School District was liable for J.E.'s tuition and other costs through the conclusion of the administrative proceedings; it did not address the separate question whether the School District's liability would continue through any proceedings in the District Court. As noted above, our precedent directs that it should.

---

[2] We have not addressed the difficult question whether the stay-put provision also applies through the pendency of an IDEA dispute in the Court of Appeals. *See Drinker*, 78 F.3d at 868 n.16. We need not do so in this case for the reasons set forth in our October 25, 2011 order denying J.E.'s and his parents' motion for preliminary injunction.

The School District's secondary argument, that the District Court erred by not applying the usual four-part test for injunctive relief, is also easily dismissed. The stay-put provision "functions . . . as an automatic preliminary injunction"; it "'substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships.'" *Drinker*, 78 F.3d at 864 (quoting *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)). Thus, no analysis of the factors a court typically considers in awarding injunctive relief was required.

Finally, the School District asks us to order J.E.'s parents to reimburse it for tuition and transportation costs it has paid to Hill Top on J.E.'s behalf. It argues that the IDEA provides us with discretion to do so in 20 U.S.C. § 1415(i)(2)(C)(iii) ("In any action brought under this paragraph, the court – basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."). We need not consider the merits of this argument because the School District did not request reimbursement in the District Court, and it points to no statute or rule authorizing us to consider this question for the first time on appeal. We express no opinion as to whether such relief would have been available if requested in the District Court in this case or whether the School District may pursue such relief in a subsequent case.

## III.

Accordingly, we will affirm the District Court's orders.

8