22-2663-cv
*Mendez v. Banks*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: February 13, 2023
Decided: April 12, 2023

No. 22-2663

EILEEN MENDEZ, INDIVIDUALLY AND AS LEGAL GUARDIAN OF A.C., NAHOKO
MIZUTA, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF Y.M.,
KENTARO MIZUTA, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF
Y.M., SHANNON THOMASON, INDIVIDUALLY AND AS PARENT AND NATURAL
GUARDIAN OF E.P., VINCENT PENNA, INDIVIDUALLY AND AS PARENT AND NATURAL
GUARDIAN OF E.P., YARELY MORA, INDIVIDUALLY AND AS PARENT AND NATURAL
GUARDIAN OF L.N., MAYLENE OTERO, INDIVIDUALLY AND AS PARENT AND
NATURAL GUARDIAN OF K.R.,

*Plaintiffs-Appellants,*

*v.*

DAVID C. BANKS, IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK
CITY DEPARTMENT OF EDUCATION, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*[*]

Appeal from the United States District Court
for the Southern District of New York
No. 22-cv-8397, Mary Kay Vyskocil, *Judge.*

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

Before:    SACK, NATHAN, *Circuit Judge*s, and BROWN, *District Judge*.[*]

Parents and guardians of students with disabilities brought an enforcement action under the Individuals with Disabilities Education Act, alleging that the New York City Department of Education must immediately fund their children's educational placements during the pendency of ongoing state administrative proceedings. Plaintiffs moved for a preliminary injunction, which the district court denied. Plaintiffs now appeal from that denial. As a threshold jurisdictional matter, we hold that although the Plaintiffs are not yet entitled to tuition payments for the portion of the school year that has yet to occur, their claims are nevertheless ripe because they also seek payments for past transportation costs. On the merits, we hold that the IDEA's stay-put provision does not entitle parties to automatic injunctive relief when the injunctive relief concerns only educational funding, not placement. Applying the traditional preliminary injunction standard, we conclude that Plaintiffs are not entitled to the relief they seek because they have not shown a likelihood of irreparable injury. Accordingly, we **AFFIRM**.

————

> PETER G. ALBERT (Rory J. Bellantoni, Ashleigh C. Rousseau, *on the brief*), Brain Injury Rights Group, New York, NY, *for Appellants*.
>
> LORENZO DI SILVIO (Sylvia O. Hinds-Radix, Richard Dearing, Claude S. Platton, *on the brief*), New York, NY, *for Appellees*.

————

NATHAN, *Circuit Judge*:

Plaintiffs-Appellants, the parents and guardians of five minor students with disabilities, are challenging the adequacy of their children's individualized

[*] Judge Gary R. Brown, of the United States District Court for the Eastern District of New York, sitting by designation.

education programs in pending New York state administrative proceedings. Each family obtained pendency orders requiring the New York City Department of Education (DOE) to fund their children's placement at a specialized private school during the pendency of the proceedings. Immediately after—and in some cases, before—obtaining the pendency orders, Plaintiffs commenced a federal lawsuit against the DOE and its Chancellor for its failure to make payments and moved for a preliminary injunction. Plaintiffs now appeal from the district court's denial of that motion.

This appeal presents a question of statutory interpretation: whether the stay-put provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j), entitles Plaintiffs to an automatic injunction directing the DOE to fund their children's pendency placements. We hold that it does not. The IDEA's stay-put provision entitles families to automatic relief with respect to educational placement but not with respect to payments. Parents seeking educational payments may still be entitled to automatic injunctive relief if they can show that a delay or failure to pay has threatened their child's placement. But absent such a

showing, the IDEA does not compel the state to accelerate its disbursement of funds. Accordingly, we affirm the district court's denial of Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

### I. Legal Framework

The Individuals with Disabilities Education Act requires states receiving federal special education funding to provide children with disabilities with a free appropriate public education (FAPE). 20 U.S.C. § 1400(d)(1)(A). School districts must create an individualized education program (IEP) for qualifying children to ensure they receive a FAPE. *Id.* § 1414(d).

The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs. *Id.* § 1415(b)(6). New York has implemented a two-tier process. First, parents can file a complaint and be heard by an impartial hearing officer (IHO). Second, either side can appeal the IHO's order resolving the complaint to a state review officer (SRO). Following the completion of the state administrative process, either party may seek review of the

4

SRO's decision in federal or state court. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (detailing New York's process).

The IDEA contains a "stay-put" or "pendency" provision which provides that "during the pendency of any proceedings," the child is entitled to "remain in [her] then-current educational placement" at public expense. 20 U.S.C. § 1415(j). Parents can also "unilaterally change their child's placement during the pendency of review proceedings"—for instance, by enrolling them in private school—but "[t]hey 'do so . . . at their own financial risk.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (quoting *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 373–74 (1985)). If and when the parents prevail on their administrative complaint, they may seek retroactive reimbursement from the school district for the cost of tuition and certain school-related services. *Id.* Although the IDEA's stay-put provision generally does not require the state to pay the costs of a *new* educational placement during the pendency of proceedings, parents can obtain funding for a new placement if an IHO or SRO finds it to be appropriate and issues

5

a pendency order, and the school district does not appeal the decision, thereby "agree[ing] . . . impliedly by law to [the] child's educational program." *Id.* at 532.

## II. Factual Background

Plaintiffs-Appellants are parents and guardians of five students with disabilities: A.C., Y.M., E.P., L.N., and K.R. Plaintiffs all filed administrative complaints against the DOE challenging their children's IEPs. During the pendency of the proceedings, they each enrolled their children in the International Academy for the Brain (iBrain). The children are currently enrolled in iBrain for the 2022–2023 school year.

In September 2022, following individual pendency hearings before an IHO, all Plaintiffs successfully obtained pendency orders entitling them to reimbursements for tuition costs and other related services during the pendency of the administrative proceedings. The state did not appeal these orders. On September 30, 2022—immediately after obtaining favorable pendency rulings and before several of the children had received the formal pendency orders—Plaintiffs sprinted to federal court, alleging that the DOE and its Chancellor failed to fund their children's pendency placements for the 2022–2023 school year. Four days

6

later, Plaintiffs moved for a preliminary injunction and an order requiring the DOE to "immediately implement each Student's Pendency Order, by funding the Students' tuitions and related services, including transportation and nursing, where applicable, for the 2022–2023 extended school year." Joint Appendix (JA) 104.

In response, the DOE indicated the next day that it "[was] committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention"; that the underlying pendency orders had all been issued within the preceding three weeks; and that the payment process "is not instantaneous." *Id.* at 68. The DOE later explained that "[t]he amount of payment is typically determined by [financial] documents," which the DOE must receive from each student and review, and "such documentation was furnished [only] after Plaintiffs initiated this action." Ltr. from Jacquelyn Dainow to Hon. Mary Kay Vyskocil at 2, *Mendez v. Banks*, No. 22-cv-8397 (S.D.N.Y. Oct. 7, 2022), Dkt. No. 13.

On October 11, 2022, the district court denied Plaintiffs' motion for a preliminary injunction, reasoning that Plaintiffs were unable to show irreparable harm arising from the DOE's alleged failure to pay. Further, the court rejected Plaintiffs' argument that the IDEA's stay-put provision, 20 U.S.C. § 1415(j), entitles them to an automatic preliminary injunction, reasoning that the provision pertains to educational placement, not funding. Plaintiffs timely appealed, and we granted their motion for expedited briefing.

## DISCUSSION

### I. Ripeness

We must first address whether Plaintiffs' claims are ripe for review. "Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998). For a cause of action to be ripe, and therefore justiciable, "it must present a real, substantial controversy, not a mere hypothetical question. . . . A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citations omitted). "The

8

doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (internal quotation marks and citation omitted).

Plaintiffs' alleged grievance is the "DOE's failure to fund each respective Student's placement at iBRAIN," for which Plaintiffs seek an injunctive order requiring the DOE to "immediately fund" their children's placements and damages for the DOE's delay or failure to do so. JA 19–20. However, the DOE has already made tuition payments for all five students through at least March 2023. *See* Ltr. from Thomas Lindeman to Hon. Stewart D. Aaron at 1, *Mendez*, No. 22-cv-8397 (S.D.N.Y. Mar. 10, 2023), Dkt No. 46. Although Plaintiffs seek payments for the remainder of the school year, they are not yet entitled to that relief.

The pendency orders oblige the DOE to fund the children's placement only during the pendency of the underlying FAPE proceedings. As Plaintiffs acknowledged at oral argument, *see* Oral Argument at 04:52, 05:35, 06:18, the DOE's obligation will be extinguished once the students have final decisions—that is, once the IHO has issued a decision on the merits and that decision is no longer

9

being appealed. *See* 20 U.S.C. § 1415(j); *see also Ventura de Paulino*, 959 F.3d at 531 ("We have interpreted this provision to require a school district to continue funding whatever educational placement was last agreed upon for the child *until the relevant administrative and judicial proceedings are complete*." (emphasis added) (internal quotation marks and citation omitted)). Accordingly, for us to conclude that the DOE has a legal obligation to fund the children's placement for a given period, we would first need to know whether the underlying proceedings remain pending during that period. Because we cannot now ascertain the future, we cannot assume that the DOE's legal obligation will continue through the remainder of the school year. Plaintiffs' claims are therefore unripe: their entitlement to tuition for the remainder of the school year "depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (internal quotation marks and citation omitted). The DOE must first withhold payments that have actually accrued before Plaintiffs can seek those payments in court.

10

Plaintiffs attempt to circumvent this jurisdictional obstacle by arguing that there is no realistic chance that any of the students will have final decisions by the end of the 2022–2023 school year, such that under any iteration of events, they will inevitably be owed more payments. If the IHO rules against Plaintiffs on the merits, they state they would appeal through multiple levels of review, which could take years before all the students have final decisions. If the IHO instead rules in Plaintiffs' favor and the DOE appeals, the proceeding would likewise remain pending. And if the IHO rules in Plaintiffs' favor and the DOE does not appeal, then the DOE would be required to reimburse Plaintiffs anyway. As a factual matter, Plaintiffs may be correct that the DOE will end up owing them payments for the rest of the school year, either because the proceedings remain pending or because Plaintiffs have succeeded on the merits. But this prediction, however likely to become true, does not suffice to ripen Plaintiffs' claims because it relies on state administrative decisions that have not yet been made. *See, e.g.*, *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022) (explaining that a takings claim is not ripe until the "government entity charged with

implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (citation omitted)).

Plaintiffs also argue that prophylactic relief is warranted because the DOE has a track record of making untimely payments and is predestined to do the same here. But even assuming such a track record could render these claims ripe, nothing in the record before us indicates that the DOE will shirk its obligations when they come due. To the contrary, the DOE has repeatedly and unequivocally stated that it intends to continue paying for the children's schooling at iBrain during the pendency of the underlying FAPE proceedings. The DOE's actions offer an even more definitive rebuttal: during this litigation, the DOE has prepaid tuition costs months *before* they accrued. In any case, we do not determine the justiciability of a dispute based on a purely speculative gamble about a defendant's future decisions.

Although Plaintiffs' demand for future tuition payments has not ripened and could theoretically never ripen into a cognizable claim, the same cannot be said with respect to transportation costs. In a status update dated March 10, 2023,

Plaintiffs indicated that they sent invoices for transportation costs incurred in February to the DOE and were still awaiting payment. *See* Ltr. from Thomas Lindeman to Hon. Stewart D. Aaron, *Mendez*, No. 22-cv-8397 (S.D.N.Y. Mar. 10, 2023), Dkt No. 46. Because this claim for transportation costs depends on an allegedly unmet existing obligation rather than "future events that may not occur as anticipated, or indeed may not occur at all," *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (citation omitted), the claim is ripe for review.

## II. Preliminary Injunction

"We review a district court's denial of a preliminary injunction for abuse of discretion, examining the legal conclusions underpinning the decision *de novo* and the factual conclusions for clear error." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2676 (2022).

Plaintiffs challenge the district court's denial of a preliminary injunction on two bases. First, they argue that the district court erred in applying the traditional preliminary injunction standard because the IDEA's stay-put provision, 20 U.S.C. § 1415(j), entitles them to an automatic injunction. In the alternative, they argue

13

that the district court abused its discretion in denying a preliminary injunction under the traditional standard. Both of these arguments lack merit.

## A. Applicability of the Stay-Put Provision

As described above, the IDEA's stay-put provision entitles children with disabilities to "remain in the[ir] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j). This provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). This Court has characterized § 1415(j) as "in effect, an automatic preliminary injunction," given that it "substitutes an absolute rule in favor of the status quo"—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships. *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

Plaintiffs contend that § 1415(j) applies to their request for a preliminary injunction and claim that the district court abused its discretion by requiring them to show irreparable harm. Their argument proceeds as follows: (1) § 1415(j)

14

functions as an "automatic injunction," with no requirement to show irreparable harm in order to maintain an educational placement, and (2) "funding goes hand-in-hand with placement." Appellants' Br. 17. Therefore, they contend, there is no requirement to show irreparable harm in order to obtain an order requiring the DOE to *immediately* fund the educational placements for the 2022–2023 school year.

Plaintiffs are wrong as a matter of law. Although propositions (1) and (2) are both true, and the DOE is obliged to fund their children's educational placements for the duration of the proceedings, that does not mean that § 1415(j) requires the DOE to automatically *fast-track* funding for the educational placements. Nothing in the text of § 1415(j) goes that far.

By summary order, this Court rejected a nearly identical argument by a group of iBrain families in *Abrams v. Porter*, No. 20-3899-cv, 2021 WL 5829762 (2d Cir. Dec. 9, 2021). In that case, the plaintiffs also requested "an automatic injunction[] which would have directed the DOE to immediately make all outstanding payments allegedly due under the pendency orders." *Id.* at *1. The Court agreed that the DOE was required to make payments to maintain the

15

children's educational placements, but it noted that "the students' placements at iBRAIN were not at risk in the absence of an automatic injunction." *Id.* at *2. Because "both sides agreed that there was no risk of the students losing their pendency placement," the Court held that "the district court did not abuse its discretion in denying an injunction under the IDEA's stay-put provision." *Id.*

We agree with *Abrams*'s reasoning and conclude that the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement. Parents or guardians may still be able to obtain such relief if they establish that a delay or failure to pay has jeopardized their child's educational placement. But absent such a showing, the DOE is not obliged to circumvent its ordinary payment procedures.

Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration. The DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to fund placements. *See* N.Y.C. Indep. Budget Off., "Carter

Case" Spending for Students with Special Needs Continues to Grow Rapidly 2 (2021), https://ibo.nyc.ny.us/iboreports/carter-case-spending-for-students-with-special-needs-continues-to-grow-rapidly-march-2021.pdf. Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement. And "[n]othing in the statutory text or the legislative history of the IDEA . . . implies a legislative intent to permit [parents or guardians] to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states." *Ventura de Paulino*, 959 F.3d at 535 (citation omitted).

### B. Traditional Preliminary Injunction Standard

In the alternative, Plaintiffs argue that the district court abused its discretion under the traditional standard for granting a preliminary injunction. We disagree. To obtain a preliminary injunction, plaintiffs must show (1) "a likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly in the [plaintiffs'] favor," (2) that they are "likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in [their] favor," and (4) "that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal quotation marks and citations omitted).  Plaintiffs effectively conceded that they would not suffer irreparable harm in their motion for expedited briefing.  Mot. to Expedite Appeal at 18, *Mendez v. Banks*, No. 22-2663 (2d Cir. Oct. 31, 2022), Dkt. No. 9 ("Students are not currently suffering the full extent of the irreparable harm stemming from the school system's continued failure and/or inability to provide them with a FAPE because iBRAIN has allowed the Students to remain in the school.").

Instead of arguing that their children's pendency placements are at risk, Plaintiffs allege that they and their children have suffered irreparable harm in the form of a violation of the procedural rights afforded to them under the stay-put provision.  But for the reasons discussed above, § 1415(j) does not create a procedural right to immediate payment, at least not absent a showing that a child's

18

placement will be put at risk. In short, there has been no violation of Plaintiffs'

rights, and thus no procedural injury, reparable or irreparable.

Plaintiffs also rely on *Petties v. District of Columbia*, 881 F. Supp. 63 (D.D.C.

1995)—an out-of-Circuit, district court opinion that is not binding on us—for the

proposition that failure to remit pendency payments creates irreparable harm. In

*Petties*, students and their parents brought a class action against the District of

Columbia and moved for a preliminary injunction to remedy late payments and

underpayments under the IDEA. *Id.* at 64. The court applied the traditional

preliminary injunction standard and granted the motion because private schools

and service providers had indicated that the D.C. school district's untimely

payment practices would force them "to discontinue existing placements, to refuse

to accept further placements of . . . students for the current and [subsequent]

school years, or to discontinue providing services to them." *Id.* at 66. Unlike here,

where no one has indicated that the children's placement or receipt of services is

at risk, the D.C. school district's delayed payments in *Petties* created an imminent

risk that students would be denied a FAPE. Given Plaintiffs' own concessions that

their children's placements are not in danger, we conclude that the district court did not abuse its discretion in denying a preliminary injunction.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.